**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ARTUR ASTAFEV,

Petitioner,

v.

WARDEN, OTAY MESA DETENTION CENTER, et al,

Respondents.

Case No.:  3:26-cv-00313-RBM-AHG

**ORDER GRANTING IN PART AMENDED PETITION FOR A WRIT OF HABEAS CORPUS**

**[Doc. 5]**

Pending before the Court is Petitioner Artur Astafev's ("Petitioner") Amended Petition for a Writ of Habeas Corpus ("Amended Petition").  (Doc. 5.)  For the reasons set forth below, the Amended Petition is **GRANTED IN PART**.

## I.    BACKGROUND

Petitioner, a citizen of Russia and Georgia, entered the United States on September 22, 2022 to seek asylum with his wife and two young children.  (Doc. 5 at 2; *see* Doc. 9-1 at 2, 4.)  Shortly thereafter, "Petitioner was granted parole, under 8 U.S.C. § 1182(d)(5), which was only valid for one year."  (Doc. 9 at 2; *see* Doc. 9-1 at 4.)

Petitioner applied for asylum on November 3, 2022.  (Doc. 9-1 at 4.)  On September 20, 2023, the United States Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA"), commencing removal proceedings against Petitioner and

1

charging him as inadmissible under 8 U.S.C. § 1182 (a)(6)(A)(i) and 8 U.S.C. § 1182 (a)(7)(A)(i)(I). (Doc. 9 at 2.) Petitioner applied for work authorization on March 28, 2025, which was valid until September 12, 2025. (Doc. 9-1 at 4.)

On January 9, 2026, United States Immigration and Customs Enforcement ("ICE") detained Petitioner at Camp Pendleton while he was working as a driver for a rideshare company. (*Id*. at 2–3.) "At the time they took him into custody, ICE officials did not tell [Petitioner] why they were arresting him, nor did they give him an informal interview or the opportunity to contest his detention. (Doc. 5 at 3.)

On January 20, 2026, Petitioner, through his wife Anastasiia Astafev, commenced this action by filing an Emergency Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 (Doc. 1) and a Request for Appointment of Counsel under the Civil Rights Act of 1964, 42 U.S.C. § 2000e 5(f)(1) ("Motion to Appoint Counsel") (Doc. 2). The Court issued an Order to Show Cause setting a briefing schedule and conditionally appointing Federal Defenders of San Diego, Inc. as counsel. (Doc. 4.) On February 2, 2026, Petitioner, through counsel, filed the Amended Petition (Doc. 5) and the Court set a revised briefing schedule (Doc. 4). Respondents filed a Return to Habeas Petition ("Response") on February 13, 2026. (Doc. 9.) Petitioner filed a Traverse in Support of Petition for Writ of Habeas Corpus ("Reply") on February 17, 2026. (Doc. 10.)

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id*. § 2241(c)(3).

3:26-cv-00313-RBM-AHG

### III.    DISCUSSION

Petitioner claims that his detention violates the Administrative Procedure Act ("APA") and the Fifth Amendment's Due Process Clause.  (Doc. 5 at 3–7.)  Respondents argue that: (1) this Court lacks jurisdiction over Petitioner's claims under 8 U.S.C. § 1252(g) and § 1252(b)(9); and (2) "Petitioner's claims for alleged statutory and constitutional violations fail because" he is lawfully detained under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2).  (Doc. 9 at 3–6.)[1]

**A.    Jurisdiction**

As a preliminary matter, courts in this District have consistently rejected Respondents' argument that similarly situated petitioners' claims are jurisdictionally barred under 8 U.S.C. § 1252(g) and § 1252(b)(9).  *See Noori v. LaRose*, — F. Supp. 3d —, 2025 WL 2800149, at *7 (S.D. Cal. Oct. 1, 2025) (maintaining jurisdiction to review lawfulness of parole revocation).

In this case, Petitioner does not challenge the decision to commence removal proceedings or any act to execute a removal order.  Instead, Petitioner challenges the lawfulness of the revocation of his parole and "argue[s] that the revocation of his parole and his detention violated both the regulations and due process."  (Doc. 10 at 2.)  He therefore seeks to enforce his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order."  *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. Sept. 3, 2025) (emphasis in original); *see Araujo v. LaRose*, No. 25cv2942-BTM-MMP, 2025 WL 3278016, at *1 (S.D. Cal. Nov. 24, 2025) ("There will be jurisdiction if DHS failed to follow the law when revoking parole.").  Accordingly, § 1252(g) does not strip the Court of jurisdiction.

---

[1]  Respondents alternatively argue that "the Court should ensure Petitioner properly exhausts administrative remedies."  (Doc. 9 at 4.)  However, a request to exhaust administrative remedies would be futile because Petitioner is not entitled to a bond hearing under 8 U.S.C. § 1225(b).  *See Omer G.G. v. Kaiser*,— F. Supp. 3d—, 2025 WL 3254999, at *4 n.7 (E.D. Cal. Nov. 22, 2025).

3:26-cv-00313-RBM-AHG

Section 1252(b)(9) also does not present a jurisdictional bar to the Amended Petition. This provision was "intended to 'channel judicial review over *final orders of removal* to the courts of appeals,' not 'foreclose *all* judicial review of agency actions' touching on deportation proceedings writ large." *Salvador v. Bondi*, Case No. 2:25-cv-07946-MRA-MAA, 2025 WL 2995055, at *4 (C.D. Cal. Sept. 2, 2025) (emphasis in original) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). "Adopting Respondent's application of § 1252(b)(9) would permit an excessive detention to take place by the time a final order of removal was eventually entered." *Noori*, 2025 WL 2800149, at *7. In rejecting such an expansive interpretation of § 1252(b)(9), the Supreme Court has explained that:

> Interpreting 'arising from' in this extreme way would . . . make claims of [unlawful] detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly [unlawful] detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018).

This logic applies equally here. As previously noted, Petitioner is not challenging the Government's decision to detain him in the first place—he challenges the legality of the revocation of his humanitarian parole in violation of mandatory procedures and without due process. Accordingly, the Court has jurisdiction to review the lawfulness of Respondents' revocation of Petitioner's parole. *See Noori*, 2025 WL 2800149, at *5–7.

**B.    Due Process**

Respondents argue that Petitioner is lawfully subject to mandatory detention because "his parole was terminated, and in any event, expired on September 21, 2023." (Doc. 9 at 5–6.) Petitioner does not dispute that his detention is governed by § 1225. Rather, Petitioner contends that his re-detention, even after his parole expired, without "proper notice, reasoning, and a pre-deprivation hearing" violated the Fifth Amendment's Due Process Clause. (Doc. 5 at 6–7 (quoting *Salazar v. Casey*, No. 25-cv-2784 JLS-VET, 2025

WL 3063629 (S.D. Cal. Nov. 3, 2025)); Doc. 10 at 2–4.)

### 1.      Entitlement to Due Process Rights

The Fifth Amendment's Due Process Clause provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Indeed, "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032, (N.D. Cal. 2025). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions of release.'" *Id*. (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

While Respondents note Petitioner was granted parole for only one year (*see* Doc. 9-1 at 4), "numerous courts in the Ninth Circuit have found that when a noncitizen is paroled under that section, his 'liberty interest [does] not expire along with his parole.'" *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP (HC), 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) (quoting *Omer G.G.*, 2025 WL 3254999, at *5) (citing cases). "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).

Here, Petitioner is not an "arriving" noncitizen but one that has been present in the United States for over two years. "This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal." *Noori*, 2025 WL

5

3:26-cv-00313-RBM-AHG

2800149, at *10 (citing *Yamataya v. Fisher*, 189 U.S. 86, 87, 99–100 (1903) ("[T]he deportation of [a noncitizen present in the United States for four days] without provision for such a notice and for an opportunity to be heard was inconsistent with the due process of law required by the 5th Amendment of the Constitution.")).  As Petitioner "has passed through our gates," he "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).

Moreover, Petitioner is not subject to an order of removal and "was detained *before* he was scheduled to appear" at individual hearing for his immigration case.  *D.L.C.*, 2026 WL 145646, at *4 (emphasis in original); *see Omer G.G.*, 2025 WL 3254999, at *6 (noting "[t]his conclusion is bolstered by the fact that the applicable regulations provide that if a non-citizen is re-detained after parole expires, they 'shall again be released on parole' if their 'exclusion, deportation, or removal order cannot be executed within a reasonable time . . . .'") (quoting 8 C.F.R. § 212.5(e)(1), (e)(2)(i)).  Petitioner applied for asylum relief and has no criminal history.  Respondents also granted Petitioner work authorization over a year and a half *after* the expiration of his parole. (*See* Doc. 9-1 at 4.)  Respondents therefore implicitly promised Petitioner's continued release, and Petitioner reasonably relied on that implicit promise.  Accordingly, Petitioner has a protected liberty interest in his release.

### 2.   Adherence to Due Process

To determine the procedural protections required  to satisfy the Due Process Clause, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  The Court must consider: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

First, Petitioner has a significant liberty interest in remaining out of custody pursuant

3:26-cv-00313-RBM-AHG

to his humanitarian parole.  *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."); *Morrissey*, 408 U.S. at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life."); *Pinchi*, 792 F. Supp. 3d at 1034 ("[The petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [the petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria.").  Petitioner was therefore "entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination."  *Noori*, 2025 WL 2800149, at *11; *see Araujo*, 2025 WL 3278016, at *2 ("Due process for parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination.").

"Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing [him] a reason for revocation or giving [him] an opportunity to be heard."  *Gonzalez Salazar v. Casey*, Case No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025).  Civil immigration detention is permissible only to prevent flight or protect against danger to the community.  *Zadvydas*, 533 U.S. at 690.  Here, there is no evidence that Petitioner's detention would serve either purpose.  "Since DHS's initial determination that Petitioner should be paroled because [he] posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed."  *Gonazlez Salzar*, 2025 WL 3063629, at *4 (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").

Respondents argue the NTA, issued to Petitioner on September 20, 2023, terminated Petitioner's parole.  (Doc. 9 at 5.)  However, Respondents have not submitted evidence

3:26-cv-00313-RBM-AHG

showing the Secretary of Homeland Security found that the purposes of Petitioner's parole have been served, as required under  8 U.S.C. § 1182(d)(5)(A).  *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1138 (D. Or. 2025) (explaining § 1182(d)(5)(A) "has a mandatory requirement—parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met").   Respondents also argue that no notice was required because Petitioner's parole was valid for only one year and automatically expired on September 21, 2023.  (Doc. 9 at 5.)  The relevant regulations provide for the automatic termination of parole "without written notice (i) upon the [noncitizen's] departure from the United States . . . , or, (ii) if not departed, at the expiration of the time for which parole was authorized . . ." 8 C.F.R § 212.5(e)(1)(i)–(ii).  Although notice may not have been required under the regulations, this Court follows other courts in this District and "disagrees with Respondent[s] that an expiration of parole automatically extinguishes any due process claim." *Osaretin v. Warden, Otay Mesa Det. Ctr.*, Case No.: 25-cv-3612-JES-MSB, 2026 WL 280077, at *2 (S.D. Cal. Feb. 3, 2026).[2]  "That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide [an] individualized hearing prior to re-detaining the parolee." *Ramirez Tesara*, 800 F. Supp. 3d at1136 .  Indeed, "as there were no procedural safeguards to determine if [P]etitioner's re-detention was justified, 'the probable value of additional procedural safeguards . . . is high.'"  *Omer G.G.*, 2025 WL 3254999, at *7 (quoting *A.E. v. Andrews*, Case No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)).

Third, Respondents' interest in detaining Petitioner without reasoning or a hearing is low.  *See Pinchi*, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."); *Ortega v.*

---

[2]  For these reasons, however, the Court **DENIES** Count One for violations of the relevant regulations and the APA.

3:26-cv-00313-RBM-AHG

*Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). "Therefore, because Respondents detained Petitioner by revoking [his] parole in violation of the Due Process Clause, [his] detention is unlawful." *Gonzalez Salazar*, 2025 WL 3063629, at *5; *accord Noori*, 2025 WL 2800149, at *11 (granting habeas petition upon finding that summary revocation of the petitioner's parole violated his due process rights).

### IV.   CONCLUSION

Based on the foregoing reasons, the Amended Petition (Doc. 5) is **GRANTED IN PART**. Specifically, the Court **DENIES** Count One and **GRANTS** Count Two.

1. Accordingly, Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting parole.

2. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before an immigration judge to determine whether detention is warranted. Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.

**IT IS SO ORDERED**.

DATE:  March 6, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

9

3:26-cv-00313-RBM-AHG